UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

Robert F. Flannery, Jr.
Katherine H. Flannery,　　　　　　　　　　　　　　　Case No. 16-46511-MBM
　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 13
　　　　　　　　Debtors.　　/　　　　　　　　　　　Hon. Marci B. McIvor

## OPINION GRANTING DEBTORS' MOTION FOR RECONSIDERATION AND VACATING ORDER TERMINATING AUTOMATIC STAY AS TO FUNDS ON DEPOSIT

This matter is before the Court on Debtors' Motion for Reconsideration. Debtors' seek reconsideration of an Order issued on July 19, 2016, terminating the automatic stay as to funds on deposit with creditor Michigan First Credit Union (Docket No. 31). For the reasons stated in this Opinion, Debtors' Motion for Reconsideration is granted, the Order Terminating the Automatic Stay as to Funds on Deposit is vacated, and the creditor's Motion for Relief from Stay Regarding Funds on Deposit is denied.

## Factual Background

The facts are undisputed.

On June 28, 2013, Debtors obtained a vehicle loan from Michigan First Credit Union ("Creditor" or "Michigan First"). The loan was for $8,950.00 to be repaid in monthly installments of $326.60 at a rate of 18.74% per annum.

To secure the debt, Debtors gave Michigan First a lien on the vehicle (a 2007 Lincoln MKZ) and pledged "shares and deposits in the credit union." Specifically, the Consumer Lending Plan Advance Receipt and Truth in Lending Statement states:

> **Security**: You are giving a security interest in your shares and deposits in the credit union, as well as the collateral described below [the vehicle].

A separate document, titled "Consumer Lending Plan," includes the following relevant provisions:

> By signing below, you are:
> . . .
>
> 2. **Pledging your shares and deposits in the Credit Union**. If you default, we may apply the shares and deposits in your accounts to the amount you owe us. We may also prevent you from withdrawing shares or deposits if you are in default, or, in the case of a share-secured or deposit secured loan, if such withdrawal would cause your balance to fall below what you owe. . .
>
> 3. **Granting a security interest in all property you purchase or otherwise pledge.** If you default on any subaccount under the Plan, we may seize and sell any property you have purchased or pledged under that subaccount or any other subaccount. . . .

The term "default" is defined by the Consumer Lending Agreement:

> You shall be considered in default if we should, in good faith, believe that prospect of payment, performance or our security interest in the collateral is impaired. You shall also be in default if: (1) you break any promise made under this Plan; (2) you do not use the loan proceeds for the purpose stated in your advance request; (3) you die; (4) **you file a petition in bankruptcy, insolvency, or receivership or are put involuntarily into such proceedings**; . . .

(Emphasis added). The Consumer Lending Plan includes a security agreement that states, in relevant part:

> **Security Interest: Description of Collateral:** By signing this Consumer Lending Plan, any advance proceeds check, a document that makes specific reference to this Security Agreement and/or accessing, using or otherwise accepting any funds, accounts or services under the Plan, you grant us a security interest in all goods, property or other items purchased under this Plan. . .
>
> **CONSENSUAL PLEDGE OF SHARES; Consensual Lien, Statutory Lien; Right to Set-off; Administrative Freeze:** By signing the Loan Application or Consumer Lending Plan, and/or by accessing, using or otherwise accepting any funds, accounts or services, you grant us a lien on your shares in the Credit Union. We also have similar statutory lien rights in your shares and deposits under Michigan law, as well as the common law right to set-off and administrative freeze. "Shares", "share accounts", "deposits", and "deposit

2

accounts" mean any and all funds regardless of the source of those funds, in any joint or individual account held and whether your interest in the account(s) is direct, indirect, contingent or secondary and whether held now or in the future . . .

If you default, we may apply the funds in your share accounts and deposit accounts to any obligation you owe us without any legal process, court proceeding or any notice to any owner of the affected share and deposit accounts, unless applicable law so requires. You specifically agree that we have the right to apply an administrative freeze on any of your shares and accounts subject to applicable law, and such action shall not violate 11 U.S.C. § 362 or other applicable law. These rights are multiple and we can exercise one or all of them.

. . .

**Release of Lien:** We will not release any lien on any collateral if you are delinquent on or in default on any subaccount under this Plan.

On April 29, 2016, Debtors filed a joint voluntary Chapter 13 bankruptcy petition. At the time the petition was filed, the remaining balance on the loan to Michigan First was $1,578.81. (See Creditor's Proof of Claim, No. 3). The balance in Debtors' deposit account on the date of filing was $751.51.

At the time the petition was filed, Debtors had made all of the required payments on their loan.

Debtors' proposed Chapter 13 plan treats Michigan First as a Class 5.1 claim to be paid in full at 5% interest over 60 months.

Upon receipt of the notice of Debtors' bankruptcy, Michigan First applied an administrative freeze on Debtors' deposit accounts in the amount of $751.51.

On May 26, 2016, Michigan First filed a Motion for Relief from Stay as to the funds on deposit. Michigan First sought to lift the stay to apply the funds on deposit to the balance owed on the vehicle loan. In its Motion, Michigan First asserts that it has both consensual and

statutory liens on the funds in Debtors' deposit account. It also asserts that the Debtors' proposed Chapter 13 plan seeks to repay the remaining loan balance on terms less favorable than the original contract terms, and that modification by way of the Chapter 13 plan triggers a default. According to Michigan First, that default is just cause to lift the stay for purposes of applying the deposit account funds to the loan balance.

On June 7, 2016, Debtors filed a response to the Motion. Debtors assert that their proposed plan adequately protects Michigan First and that cause does not exist to lift the stay.

On July 14, 2016, the Court heard oral argument on the Motion to Lift Stay.

On July 19, 2016, the Court entered an Order Terminating the Automatic Stay as to Funds on Deposit.

On July 25, 2016, Debtors filed the present Motion for Reconsideration, asserting that the Order granting the lift of stay is based on a misreading of the law. Specifically, Debtors contend that the Court relied "on Creditor and Trustee representations that it is 'black letter law' that Creditor has a right to stay lift based simply on an existing non-bankruptcy setoff right." Debtors assert that, "while a setoff right creates a prima facie case of 'cause' to lift the automatic stay, it merely shifts the burden to the debtor to prove that no cause exists to lift the automatic stay." (Debtors' Motion for Reconsideration ¶¶ 7,8). Because Debtors believe they have shown that the creditor is adequately protected, Debtors argue that the lift of stay is not justified and that the Order lifting the stay should be vacated.

On July 27, 2016, the Court Ordered Michigan First to file a brief in response to Debtors' Motion for Reconsideration. That brief was filed on August 9, 2016.

Having reviewed the record, the briefs, the exhibits and the relevant case law, the Court

4

concludes that Debtors' Motion for Reconsideration should be granted.

## Standard for Reconsideration

Pursuant to Local Bankruptcy Rule 9024-1 (E.D.Mich.), a motion for reconsideration must be filed within fourteen days after the order to which it objects is issued. It should be granted only if the movant demonstrates that the Court and the parties have been misled by a palpable defect <u>and</u> that a different disposition of the case must result from a correction of such palpable defect. A motion that merely presents the same issues already ruled upon by the Court, either expressly or by reasonable implication, shall not be granted.

## Analysis

Michigan First's Motion for Lift of Stay was predicated on the argument that as a secured creditor, the stay should be lifted to permit Michigan First to exercise its lien rights against its collateral, specifically, Debtors' deposit account. The method by which Michigan First was seeking to enforce its lien was to exercise a right of setoff, setting off the balance in the deposit account against the balance owed on the vehicle loan. In their Motion for Reconsideration, Debtors argue that the existence of a contractual right of setoff is insufficient to establish cause to lift the automatic stay in the absence of a pre-petition default on the contract.

Understanding the parties arguments requires the Court to analyze the interplay between the right of setoff, the protections of the automatic stay, and the permissible treatment of a secured creditor's claims in a Chapter 13 plan of reorganization. The Court will first look at the right of setoff to determine whether Michigan First has such a right on the facts of the instant case. The Court will then examine whether the existence of the right of setoff is sufficient to establish cause to lift the stay, or whether a proposed modification of the contractual obligation

5

to Michigan First (as proposed by the Chapter 13 plan) establishes cause to lift the stay.

"The doctrine of setoff represents the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other." *In re Shultz,* 325 B.R. 197, 200-01 (Bankr. N.D. Ohio 2005), citing *Baker v. Nat'l City Bank*, 511 F.2d 1016, 1018 (6th Cir. 1975); *Studley v. Boylston Nat. Bank.*, 229 U.S. 523, 528 (1913). "Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995). Section 553(a) provides, in relevant part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . .

11 U.S.C. § 553(a). Thus, whatever setoff rights a creditor has *prior* to the bankruptcy filing, the creditor retains post-bankruptcy filing. *See Strumpf*, 516 U.S. at 20 ("Section 553(a) . . . sets forth a general rule, with certain exceptions, that any right of setoff that a creditor possessed prior to the debtor's filing for bankruptcy is not affected by the Bankruptcy Code.")

Once a debtor files for bankruptcy, a creditor cannot immediately or automatically exercise a pre-petition right of setoff because that right is subject to the Bankruptcy Code's automatic stay. Specifically, § 362(a)(7) provides, in relevant part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title. . . operates as a stay, applicable to all entities, of--the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor[.]

11 U.S.C. § 362(a)(7). In order to execute on its right to setoff, a creditor must establish that it has a legitimate pre-bankruptcy right to setoff and seek an order lifting the stay.

Section § 362 (d)(1) provides that the automatic stay may be lifted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d). "Aside from a lack of 'adequate protection,' the Bankruptcy Code does not clearly set forth the circumstances which may constitute 'cause' for relief from stay. The Sixth Circuit has held that the 'courts must determine whether discretionary relief is appropriate on a case by case basis.' This approach the Court labeled, the 'totality of the circumstances' test." *In re Schultz*, 325 B.R. 197, 200 (N.D. Ohio 2005) *quoting In re Trident*, 52 F.3d 127, 131 (6th Cir. 1995).

In the present case, Michigan First does not assert that the stay should be lifted for lack of adequate protection.[1] Rather, it asserts that it is entitled to relief from the stay "for cause." The "cause" appears to be that Michigan First will receive less through the plan of reorganization than it is contractually owed, and therefore, the stay should be lifted to allow Michigan First to exercise its right of setoff.

The problem with Michigan First's argument is that it confuses its right of setoff (a pre-petition remedy) with its right to object to treatment of its secured claim through Debtors' proposed plan of reorganization. It is undisputed that under both the Michigan statute and the Consumer Lending Plan, Michigan First could have a right of setoff. However, that right may only be *exercised* once there has been a default on the contractual agreement. If there has been no pre-petition default which would trigger the Creditor's right to pre-petition setoff, it can hardly be argued that cause exists to lift the stay to allow the creditor to enforce a right it did not have prior to the filing of the bankruptcy petition.

---

[1]Debtors' proposed Chapter 13 plan values the vehicle at $5,000. Michigan First does not object to that value. Given that the remaining balance on the loan is just over $1,500, there is approximately $3,500 of equity in the vehicle and the Creditor is adequately protected.

7

The first question for the Court is whether there was a pre-petition default which would have allowed Michigan First to exercise its right of setoff prior to the filing of the bankruptcy. It is undisputed that at the time Debtors filed their bankruptcy petition, they were not in default on the loan– payments under the loan agreement were current. Because there was not a monetary default, this Court concludes that Michigan First had no grounds to exercise its right to setoff prior to the filing of the petition. Therefore, there is no cause under 11 U.S.C. § 362(d)(1) to lift the stay for Michigan First to exercise a non-existent right of setoff.

The next question before the Court is whether, in the absence of a monetary default, Michigan First has established cause to lift the stay. Notwithstanding the fact that Debtors were current on their loan payments, Michigan First makes three arguments as to why there is cause to lift the stay. The first argument is that the Consumer Lending Plan includes the filing of a bankruptcy petition in its definition of default. Therefore, according to Michigan First, when Debtors filed for bankruptcy, the filing created a default, and the default triggered its right to exercise a setoff.

The Court rejects the argument that a default created solely by the filing of a bankruptcy petition is cause to lift the stay to permit a creditor to exercise a right of setoff. The United States Supreme Court made it clear in *Strumpf* that a creditor may exercise the right of setoff when the right to setoff arose *before* the commencement of the bankruptcy case. 11 U.S.C. § 553 does not create a right of setoff; if there is no right to setoff on the date the bankruptcy petition is filed, there is no cause to lift the stay to allow the creditor to exercise a right to setoff it did not have on the date the case was filed.

The Court also notes that none of the cases relied upon by Michigan First support the

8

argument that a default which occurs solely because a bankruptcy case was filed, is a default which provides cause to lift the stay. *See e.g. In re Whitaker*, 173 B.R. 359 (S.D. Ohio 1994), (debtor had a delinquent pre-petition tax obligation to the IRS); *U.S. v. Orlinski (In re Orlinski)*, 140 B.R. 600 (Bankr. S.D. Ga. 1991)(debtor had a delinquent pre-petition tax obligation to the IRS); *New Jersey Nat'l Bank v. Gutterman (In re Applied Logic)*, 576 F.2d 952, 956 (2nd Cir. 1978)(bank notified borrower in writing that it was in default); *French v. Bank One, Lima, N.A. (In re Rehab Project, Inc.)*, 238 B.R. 363, 367 (pre-petition monetary default). In each of these cases, it was a monetary default which provided cause to lift the stay and permit the creditor to exercise its right of setoff. The Court could find no case law to support the argument that a default caused solely by the filing of a bankruptcy creates a right of setoff, or provides cause to lift the automatic stay.

Michigan First's second argument is that it has a statutory right to setoff the funds in Debtors bank account against the balance owed on the vehicle loan, and that statutory right is cause for lifting the stay. Specifically, Michigan First relies on the Michigan Credit Union Act, Mich. Comp. Laws 490.101 *et. seq.* That Act provides, in relevant part:

> Except as provided in this subsection or where prohibited by applicable state or federal law or otherwise agreed by contract, a domestic credit union has a lien on any share of a member, or any deposit account from which a member may withdraw for his or her own benefit without the consent of another person, for any obligation owed to the domestic credit union by that member or for any loan cosigned or guaranteed by that member. A domestic credit union does not have a lien on any individual retirement account or other account permitting tax deferrals or providing other tax benefits under state or federal law. **A domestic credit union may refuse to allow a withdrawal from any account on which it has a lien if the member is delinquent in any outstanding obligation to the domestic credit union at the time of the withdrawal.**

Mich. Comp. Laws 490.361(4)(emphasis added). The problem with Michigan First's reliance on

this statute is that it expressly requires that a debtor be "*delinquent* in any outstanding obligation to the domestic credit union at the time of the withdrawal." (Emphasis added). It is undisputed that, in the present case, Debtors were not delinquent in their payments to Michigan First. Therefore, no statutory right of setoff exists in this case, and there is no cause to lift the stay..

Michigan First's third argument as to why cause exists to lift the stay is that Debtors "caused a loss" which allows Michigan First to enforce its lien rights against Debtors' bank account. This argument is entirely without merit. The "loss" to which Michigan First refers is its treatment in Debtors' proposed plan. As a class 5.1 claimant, Michigan First will be paid in full, but at a rate of interest below the contract rate and over a period of time beyond the contract term. A creditor's treatment under a proposed plan, a plan proposed *post*-petition and in conformance with the requirements of the Bankruptcy Code, cannot form the basis of a *pre*-petition default sufficient to trigger a creditor's right to setoff.

It is undisputed that Michigan First is oversecured; the value of the vehicle exceeds the balance owed on the loan *and* Michigan First is secured in the funds in Debtors' bank account. As an oversecured creditor, if Michigan First believes that it is being improperly treated in Debtors' plan of reorganization, Michigan First's remedy is to object to confirmation of the plan. The modification of a creditor's secured claim is not grounds for lifting the stay. If the treatment of the secured claim complies with the requirements of 11 U.S.C. § 1325(a)(5), any loss suffered by the creditor is no different than the "loss" suffered by any creditor when a debtor files for bankruptcy.[2] A post-petition loss due to the filing of a bankruptcy does not permit a creditor to

---

[2] 11 U.S.C. § 1325(a)(5) provides:

Except as provided in subsection (b), the court shall confirm a plan if –with respect to

10

exercise a pre-petition right of setoff.

The law in this case is straightforward. What is unusual about this case are the facts–facts which rarely exist in bankruptcy. This case involves debtors who were *not* in default on their loan payments at the time they filed for bankruptcy. In the vast majority of cases, debtors have defaulted on loan payments prior to filing a bankruptcy petition. In those cases. 11 U.S.C. §§ 553, 362(a)(7), and the relevant case law require that the stay be lifted to permit a creditor to

---

> each allowed secured claim provided for by the plan–
>
> (A) the holder of such claim has accepted the plan;
>
> (B)(i) the plan provides that--
>
> > (I) the holder of such claim retain the lien securing such claim until the earlier of--
> >
> > > (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> > >
> > > (bb) discharge under section 1328; and
> >
> > (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
> (iii) if--
>
> > (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> >
> > (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> (C) the debtor surrenders the property securing such claim to such holder;

exercise its right of setoff. In the present case, where no pre-petition default exists, the law requires a different result.

## Conclusion

For the foregoing reasons, the Court finds that there was palpable error in its July 19, 2016 Order terminating the stay as to funds on deposit with Michigan First Credit Union. That Order will be vacated and an Order Granting Debtors' Motion for Reconsideration and Denying Michigan First's Motion to Terminate the Stay as to Funds on Deposit will be entered.

Signed on August 19, 2016

                                              /s/ Marci B. McIvor
                                              Marci B. McIvor
                                              United States Bankruptcy Judge